UNITED STATES *v.* HUNTER.[1]

*(Circuit Court, E. D. Missouri.* September 16, 1884.

INDIAN LANDS—NEGOTIATING LEASE OF, NOT AN OFFENSE—REV. ST. § 2116.
　　It is not an offense, within the meaning of section 2116 of the Revised Statutes, to negotiate, without authority from the United States government, a lease of lands for grazing purposes, from an Indian tribe to a corporation.

Demurrer to Petition.
*R. Graham Frost* and *Robt. W. Goode,* for informer.
*Taylor & Pollard,* for defendant.
BREWER, J.   This is an action under section 2116 of the Revised Statutes to recover a penalty of $1,000.   The section is as follows:

"No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation, or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the constitution.   Every person who, not being employed under the authority of the United States, attempts to negotiate such treaty or convention, directly or indirectly, or to treat with any such nation or tribe of Indians for the title or purchase of any lands by them held or claimed, is liable to a penalty of one thousand dollars.   The agent of any state, who may be present at any treaty held with the Indians under the authority of the United States, in the presence and with the approbation of the commissioners of the United States appointed to hold the same, may, however, propose to and adjust with the Indians the compensation to be made for their claim to lands within such state which shall be extinguished by treaty."

1 Reported by Benj. F. Rex, Esq., of the St. Louis bar.

The petition charges that defendant, not being employed under the authority of the United States, attempted to negotiate a treaty and convention with the Cherokee Nation of Indians for a lease of certain lands, by inducing the principal chief of the Cherokee Nation and certain parties, the directors of the Cherokee Strip Live-stock Association, to sign the same. The lease is copied in full in the petition, and appears to be a lease of 6,000,000 acres of land for the term of five years for grazing purposes, and to have been executed by authority of the national council of the Cherokee Nation. To this petition the defendant demurred, and the question is whether inducing the execution of such a lease is a violation of the statute.

This question does not necessarily involve the validity of the lease; for, while the lease may be invalid, it does not follow that inducing its execution is a violation of the penal laws of the United States. The section quoted, being a penal one, is to be strictly construed. By this, of course, it is not intended that the language should be strained so as to exclude the act of the defendant, but simply that, giving the language a fair and reasonable construction, having in view the plain and ordinary meaning of the terms employed and the evident intent of congress, the act of the defendant must be clearly within the scope of the prohibition. This compels an analysis of the section. The first sentence declares that no purchase, etc., shall be of any validity, in law or equity, unless the same be made by treaty or convention entered into pursuant to the constitution. The words "treaty or convention" are the significant words in the sentence. They generally mean compacts between states and organized communities, or their representatives. This is the ordinary signification of those words,—the first meaning which is suggested by their use. This is not doubted as to the word "treaty," and is scarcely admissible of doubt as to the word "convention," when used, as here, in connection with the word "treaty;" and that the two words are here used in that sense is made more obvious by the words which follow, "entered into pursuant to the constitution." Obviously, the language here refers to some public compact entered into by the United States, or under the authority of the federal constitution, with an Indian nation or tribe. Of course, it must be borne in mind that, while the Indian tribes and nations and their lands are within the general sovereignty of the United States, yet the government has always recognized a *quasi* national existence on the part of each Indian tribe, and has uniformly dealt with these tribes by treaty. So that this sentence emphatically declares the invalidity of any purchase, lease, or other conveyance of Indian lands except through the means of some public treaty. This, which I think the only fair interpretation of the sentence, is confirmed by the language in which, at the very inception of the government, this matter was sought to be regulated by statute. See section 4, p. 138, vol. 1, St. at Large, which was enacted in 1700, and reads as follows:

"And be it enacted and declared that no sale of lands made by any Indians, or any nation or tribe of Indians, within the United States, whether having the right of pre-emption to such lands or not, unless the same shall be made and duly executed at *some public* treaty, held under the authority of the United States."

This sentence is the key to the whole section, and interprets its subsequent provisions. The second sentence contains the penalty. It provides that every person who, not being employed under the authority of the United States—that is, not authorized by the general government to represent it in treaty negotiations—attempts to negotiate *such* treaty or convention,—that is, the treaty or convention referred to in the first sentence, which, as we have seen, is a public national compact,—is liable to a penalty, etc. If this were all the language in the sentence, there would be scarcely any room for doubt. Obviously, it contemplates the casting of a penalty upon one who assumes to act for the United States, and, usurping an authority which he does not possess, attempts to negotiate a national compact or treaty with an Indian nation. But there is another clause in the sentence which renders the question of more doubt; that denounces the penalty on every person who attempts to treat with any such nation or tribe of Indians for the title or purchase of any lands by them held or claimed. This seems to refer to an attempt, by private contract and personal arrangement, to obtain the lands of an Indian nation. But what kind of a private contract is denounced? The description is not as broad as in the first sentence, for there it speaks of purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, while here it is for "*the title or purchase* of any lands." Does this include a mere lease for grazing purposes? I think not. A leasehold interest may be considered, for some purposes, a title, and sometimes the word "title" is used in a general sense so as to include any title or interest, and thus a mere leasehold interest; but here it is *the title*, and this, in common acceptance, means the full and absolute title; for when we speak of a man as having title to certain lands, the ordinary understanding is that he is the owner of the fee and not that he is a mere lessee; and, this being a penal statute, no extended, no strained construction should be put upon the words used in order to include acts not within their plain and ordinary significance. That this is the true construction is sustained by the section immediately following, which reads:

"Every person who drives or otherwise conveys any stock, or horses, mules, or cattle, to range and feed on any lands belonging to any Indian tribe, without the consent of such tribe, is liable to a penalty of one dollar for each animal of such stock."

This imposes a penalty on any one who, *without* the *consent* of an Indian tribe drives his stock to range and feed on the lands of such tribe. This implies that an Indian tribe may consent to the use of

their lands for grazing purposes, or, at least, that if it does consent no penalty attaches; and, if the tribe may so consent, it may express such consent in writing, and for at least any brief and reasonable time. It was said by counsel for the government that if a lease for five years can be sustained, so may one for 999 years, and thus the Indian tribe be actually dispossessed of its lands. But, as was stated in the opening of the opinion, the question here is not as to the validity of a lease, long or short, but as to whether this penal statute reaches to the mere inducing or negotiating of the lease. For the reasons I have thus given, it seems to me that it cannot be so interpreted; and whatever may be the fact as to the validity of such a lease, and entering into no discussion as to how far it is binding on the Indian nation, or whether it could be set aside at the option of the nation or by the action of the national government, I am of the opinion that the acts charged upon the defendant are not within the scope of this penal statute.

Therefore the demurrer to the petition must be sustained, and judgment entered for the defendant.